In re Donald R. and Hilda JACKSON
Donald R. Jackson & Associates
Precision Bilt Homes, Inc., Debtors.

Bankruptcy Nos. TX 83–34, TX 83–35
and TX 83–36.

United States Bankruptcy Court,
W.D. Arkansas,
Texarkana Division.

April 28, 1986.

Charles L. Honey, Prescott, Ark., former attorney for debtors.

Jim Pedigo, Hope, Ark., present attorney for debtors.

William Randal Wright, Hope, Ark., trustee.

MEMORANDUM OPINION

ROBERT F. FUSSELL, Bankruptcy Judge.

Pending before the court is an Order to Show Cause why Charles L. Honey, a former attorney for the above chapter 11 debtors,[1] should not be required to reimburse the above debtors' estates for monies received by him [2] as compensation for professional services and for reimbursement for actual, necessary expenses.[3]

After careful review of all of the evidence, the Court concludes that such reimbursement is necessary in this case, based upon the following findings of fact and conclusions of law.

On August 12, 1983 debtors Donald R. & Hilda Jackson, Donald R. Jackson & Associates, and Precision Bilt Homes filed petitions seeking reorganization under chapter 11 of the Bankruptcy Code. 11 U.S.C. § 1101, *et seq.*

The evidence shows that Mr. Honey billed the debtors intermittently for professional services and out of pocket expenses totalling $14,535.40 during the period from August of 1983 through July of 1984.[4]

---

1. On October 29, 1985 an Order was entered granting the motion by Mr. Honey to withdraw as counsel of record for the above debtors pursuant to notice and a hearing on the motion.

2. An interim trustee, William Randal Wright, was appointed by the Court in the above chapter 11 case on October 5, 1984 pursuant to a motion, notice and a hearing.

3. All of the monies received by Mr. Honey were paid out of a checking account of the debtor Precision Bilt Homes, Inc.

4. The statements from Mr. Honey and checks and receipts relevant to those statements were received at the December 16, 1985 hearing as Jackson Exhibits No. 1–23. Through Honey's Exhibit No. 3 the Court received into evidence summaries of fees totalling $11,616.50 for the period from August of 1983 through January of 1985. Summaries of expenses totalling $6,064.87 for the same period were also received. Honey's Exhibit No. 2.

Checks and receipts evidence that payments were made during the same period totalling $13,693.14 by the debtor to Mr. Honey on those bills.

One of the payments included in that sum, which specifically was disputed by Mr. Honey, was made in response to a bill from Mr. Honey's firm in the amount of $984.75 for May of 1984. The Court is convinced that Mr. Honey received the payment based upon the fact (1) that an itemized statement in that amount was billed to the debtors by the law firm of Honey & Rodgers (Jackson's Exhibit 18) and (2) that a petty cash receipt was made out by Honey & Rogers on June 29, 1984 reflecting payment of $984.75 for "May charges" (Jackson's Exhibit 19). The Court does not credit Mr. Honey's testimony that he did not receive the money. However, in regard to Mr. Honey's June-July 1984 bill to the debtors for $842.26 in the absence of any check or receipt to substantiate payment by the debtors, the Court finds that payment was not made.

The Court is convinced that Mr. Honey performed the professional services itemized in his statements to the debtors and incurred the out-of-pocket expenses billed to them for reimbursement. However, Mr. Honey, by his own admission, has never made application for employment as attorney for the debtors. Furthermore, while representing these debtors' estates, Mr. Honey has never filed with the Court an application for compensation for his fees or for reimbursement of his expenses, despite being reminded by the Court on numerous occasions of the necessity to do so.[5] Mr. Honey has, however advised the Court that he believed that he had made application for fees. The evidence is to the contrary.

This is not the first instance in which Mr. Honey, as attorney for the debtor-in-possession in a chapter 11 case, has received funds from a debtor's estate without Court approval and without applying for payment or giving notice to creditors as required by the Code. 11 U.S.C. § 330, 331; *and see J.L. Lavender and Mary Lavender, Individually, and J.L. Lavender d/b/a Lavender Construction Company,* No. TX 82–037 (Bkrtcy.W.D.Ark.) (Orders entered April 24, 1985 and March 26, 1986).[6]

Most important, Mr. Honey has not been candid or honest with the Court regarding monies he did in fact receive from the debtors during the period from August of 1983 through May 24, 1984.

At the time the Court made its initial inquiry to Mr. Honey on December 12, 1983 regarding whether he had received a general retainer or interim fee or funds, he replied "no." Upon a further inquiry by the Court on December 31, 1983, Mr. Honey, when asked if he had received any money from Mr. Jackson and Precision Bilt, responded that he had not. At the same hearing the Court again inquired about monies received. Mr. Honey then stated that he might have received a small retainer, in the neighborhood of $2,500.00. At a hearing on January 17, 1985 (less than a month later) Mr. Honey told the Court that he was mistaken, that he had not received a retainer, but had received the following sums from the debtors: $1,250 to cover the costs of preparing the applications and filing fees plus the payments of $842.26; $1,232.87; $920.30; $722.02; and $1,691.47, not as fees or expenses, but as reimbursement for the actual costs of mail outs.

In reviewing the itemized statements prepared by Mr. Honey and billed to the debtors from August, 1983, through May, 1984, the Court finds that Mr. Honey re-

---

5. Attached and incorporated as part of this Memorandum Opinion are the transcripts of hearings conducted on December 12, 1984; December 31, 1984; January 17, 1985; October 24, 1985; November 25, 1985; and December 16, 1985.

6. In the Bankruptcy Court opinion, Judge James G. Mixon found that a fee of $12,142.50 paid to Mr. Honey as attorney for the debtors' estate was unreasonable. Furthermore, in that case Mr. Honey had been appointed to represent the debtor-in-possession but had never made application for payment or given notice to creditors. Payment of the $12,142.50 had been received by Mr. Honey without Court approval.

ceived a total of $13,693.14 from the debtors at the time of the Court's initial inquiry on December 12, 1984. Further, on August 8, 1983, three days before the filing of the three debtors' petitions, he received $2,250.00. Mr. Honey's own monthly billings reflect that he billed every month for "attorneys fees incurred" and "expenses" for August 1983 through May of 1984, and that the debtors paid both for attorney fees and expenses during that period of time billed. Having prepared an itemization for time spent on professional services every month, Mr. Honey knew that he had been paid attorney's fees on a regular basis and was not truthful to the Court. The evidence reveals that Mr. Honey's attempt to represent to the Court that he had been reimbursed for actual costs of preparing the petitions, filing fees and costs of mailing is simply not true.

Furthermore, it was the debtors who disclosed to the Court that Mr. Honey had been paid attorney's fees billed.

To illustrate Mr. Honey's remarkable attempts to mislead the Court in regard to his receipt of monies from the debtors are the following excerpts of inquiries made by the Court and Mr. Honey's responses thereto.

*Hearing held on December 12, 1984*

THE COURT: Mr. Honey, did you get a general retainer in this case? Have we got pending an application—

MR. HONEY: No, sir.

THE COURT: —for interim fees?

MR. HONEY: No, sir.

THE COURT: No general retainer?

MR. HONEY: No, sir. And no fees.

THE COURT: And no other funds anywhere?

MR. HONEY: No.

*Hearing held on December 31, 1984*

THE COURT: Thank you all—appreciate it. Oh, let me ask you something, Mr. Honey. There are several other motions pending in this case that the Court is going to have to have some hearings on. Mr. Honey, I think one of them is on your interim fees. Have you made a request—have you made a request for attorney's fees?

MR. HONEY: Seems like I have, Judge.

THE COURT: I have reviewed both my Precision Bilt files and the Jacksons' files and I have never seen an application, your application for employment in the file or an order approving them.

MR. HONEY: I believe that I have filed—maybe six months ago a—

THE COURT: Look at your files and mine—

MR. HONEY: Okay.

THE COURT: —because if you haven't done it—

MR. HONEY: I have not pursued—

THE COURT: —I don't think I can enter an order approving your fees.

MR. HONEY: I have not pursued that because I knew there was no money to do it with anyway.

THE COURT: Well, have you received any money from Mr. Jackson or Precision Bilt?

MR. HONEY: No, sir.

THE COURT: You haven't received a penny in a year and a half?

MR. HONEY: Maybe a retainer, Judge, but a small one at that. I would have to go back and check and see if it was before the filing.

THE COURT: Well, how can you afford to handle this case for a year and a half for nothing?

MR. HONEY: There just hasn't been any money, Judge, to do it any other way.

THE COURT: How much retainer did you receive?

MR. HONEY: Very small. I would think in the neighborhood of $2,500.00 or somewhere in that neighborhood.

THE COURT: Well, check your records and I'll just take that up on the 17th too. Really, any funds are suppose to go through the Bankruptcy Court.

MR. HONEY: I understand that.

THE COURT: As far as any fees.

MR. HONEY: Like I say, there has not been any money to do it with.

THE COURT: You've put a lot of work into this case.

MR. HONEY: Yes, sir.

THE COURT: Court has had numerous hearings on it, and the Court would want to award you some kind of fee assignment, but anything that can be awarded has got to go through the Court.

Okay. We will continue—I'll set that matter on the 17th. Is there anything else on Precision Bilt? Okay.

*Hearing held on January 17, 1985*

THE COURT: Now, Mr. Honey, I've got one matter that the Court will want to take up the next time I'm down in Texarkana.

I've never seen in this file an application for attorney's fees and I've never seen an itemization for time. When I mentioned down there the last time, you stated that you'd probably received some fees, at least Four or Five Thousand Dollars. I don't know how much.

But, statutorily, I've got—these fees have to go through the Court for Court approval. And so, what I'm stating at this point, there are some strong cases in the Eighth Circuit where this Court may not have authority to award fees if this procedure is not followed.

So, what I'm going to do is, I'm going to furnish some cases. I want you—any fees that have been paid to you, either by Mr. Jackson in his individual case or by Precision Bilt or by Donald R. Jackson & Associates, I want to have a hearing. I would strongly suggest that you file an application. And I want to have a hearing set, as far as any fees that have been paid, and an opportunity for any persons to look at them that have an interest. Particularly, creditors and, if they have any objection, we'll have a hearing. But the final authority is vested with the Court to determine the reasonableness of it. You have done a tremendous amount of work in this case and the Court is aware of it. Since it's been here. But I'm just saying, I think

there's a real problem, unless you comply with the statutory provisions on attorney's fees, I certainly cannot award them.

MR. HONEY: Judge, let—I would like—since the Court instructed me to be prepared to do that today—and I would like to give the judge a complete status report on that in the record—

THE COURT: Have you ever filed an application?

MR. HONEY: No, sir, I never did file—

THE COURT: But I'm not going to hear it until you file an application because I can't give it to you.

MR. HONEY: I understand that, and I'm not—this is not a petition for attorney's fees. I'd just like to give the Court a report on exactly what's transpired.

Initially, the—Mr. Jackson paid our firm a—I told you in Texarkana that I thought Twenty-Five Hundred Dollars and I was mistaken. I find, in looking at our records—

THE COURT: If he hasn't paid more than that, you ought to be in bankruptcy. (Laughter)

MR. HONEY: Well, let me bring you up to date on what's happened.

Mr. Jackson paid our firm Twelve Hundred and Fifty Dollars to cover the cost of preparing the applications in three cases, plus the fee—the filing fees.

Now since that time, as the Court is aware, the mail outs in this case is just overwhelming. The last mail out we did, I think cost Sixteen Hundred Dollars. And I did not feel because that we have not—because we did not receive a retainer and had not been getting paid—I did not feel that we could afford to carry those mail outs.

Mr. Jackson has paid our firm on one, two, three, four, five separate occasions the actual cost of mail outs. On one occasion, it was Eight Hundred and Forty-Two Dollars and Twenty-Six Cents. One occasion was Twelve Hundred and Thirty-Two Dollars and Eighty-Seven Cents. One occasion was Nine Hundred and Twenty Dol-

lars and Thirty Cents. One occasion was Seven Hundred and Twenty-Two Dollars and Two Cents. And one occasion was Sixteen Hundred and Ninety-One Dollars and Forty-Seven Cents, which is not fees or expenses, it's the actual cost of mail outs.

I've prepared an accounting upon which that I intend to base a petition to the Court for allowance of fees of Fifteen Thousand, Three Hundred and One Dollars and Thirteen Cents for time and expenses for the firm.

THE COURT: Here's what I'm going to suggest one way or the other. I am thoroughly familiar with this case, but you've got to file the application.

MR. HONEY: Yes, sir.

THE COURT: And after you file it, I'm going to notice it up for a hearing. And if you have an itemization, I want it distributed to the parties of record or anybody that has requested notice of these hearings. Then I will set a hearing based—and determine the reasonableness of the fees.

I'll just have to warn you though, Mr. Honey, that if there is any objecting party, initially, if that application hasn't been filed, this Court may not have much liberty to do anything. And the Eighth Circuit is very strict on compliance with those provisions. But I'm saying, I want to do whatever equity I can do.

MR. HONEY: Sure.

THE COURT: And I know what—

MR. HONEY: Just so the Court will understand, up to this point in time, it would have been kind of like fishing in the bathtub. From this point in time on, it looks like maybe there might be a possibility of getting those paid and we will file a petition.

THE COURT: Well, let's do this. What I would like to do, though, Mr. Jackson, as far as your checks for the two corporations and personally, I want those available to the trustee. And I'd like for the trustee to determine from those checks the amounts that have been disbursed at this point, one way or the other, also, and make that part of the record.

MR. JACKSON: I have no objection to that, Your Honor.

THE COURT: Okay. And I'll be happy to set that, but I want to give them the twenty days' notice. You file your applications and I'll set it when I'm in Texarkana if I'm down there in February, probably. March for sure. I won't set it on the 30th of January because I've got a tremendous docket down there then.

Is there anything else? Good luck. Court's in recess.

*Hearing held on October 24, 1985*

THE COURT: Okay. The Jackson case, Precision Bilt—Mr. Honey, I believe you've got a motion to withdraw as counsel—

MR. HONEY: Yes, sir.

THE COURT: —pending in the TX 83–34, that is Donald and Hilda Jackson, Donald R. Jackson Associates, TX 83–35, and that should be TX 83–34 and TX 83–36.

MR. HONEY: Judge, I think for expediency we could probably hear them all together, because they—

THE COURT: Yeah, I am going to hear them all together. It's the same issue—

MR. HONEY: Same issue, yes, sir.

THE COURT: —involved in it. And in reviewing the petition, Mr. Honey, I think that paragraph four states that a situation has arisen which may place Donald R. Jackson in an adverse position to Phoenix Housing, which may cause a conflict of interest with the petitioner.

The fact that you have represented all three debtors in these chapter eleven proceedings, in which a Trustee has been appointed and you have indicated in your application—and I think you had received a retainer in regarding representing Phoenix. There is no doubt in my mind that if there—if Mr. Jackson or any of the debtors of any position adverse to Phoenix that there certainly would be a conflict of interest.

MR. HONEY: Yes, sir.

THE COURT: But I don't see how this court could permit you in these bankruptcy

proceedings to represent Phoenix, having been counsel for the three debtors and having possessed inside knowledge and information, particularly about the finances of these debtor corporations. I don't think it would be fair to the debtor to let you go to the other side on a controversy.

MR. HONEY: If the Court please, it may very well be necessary that I not represent anybody.

THE COURT: Well, I feel that way right now, Mr. Honey.

MR. HONEY: I am certainly not in the position to continue representing the debtors, I don't think.

THE COURT: Well, you are not in a position to represent Phoenix, then, because I think that in representing the debtor you have acquired—that was a privileged relationship which you acquired knowledge and information and facts, and particularly in regard to any contact with Phoenix.

MR. HONEY: Yes, sir.

THE COURT: And it would just—would not be fair for you to represent the other side or switch teams—

MR. HONEY: You may very well be right.

THE COURT: —in the middle of the ball game.

MR. HONEY: You may very well be right.

THE COURT: I didn't have any—you know, and I think you did the right thing in filing the petition and raising the potential conflict of issue, but I think we need to go one step further and I don't think that Phoenix should be given the advantage by you representing them based on past representation of Mr. Jackson.

MR. HONEY: Well, if the Court please, there is not at this time—Phoenix Housing is not a party to anything in Bankruptcy Court.

THE COURT: Well, I know it, but you have stated in it that there is a—let me hear it from you, Mr. Jackson. Don't be timid, come on up here. We have been here a long time and all of us have spent a lot of money and time.

NOTE: skipped questions and answers of Mr. Jackson in regard to conflict issue and general representation by Mr. Honey as attorney for the debtors during the chapter 11 cases.

THE COURT: I think that a controversy has arisen, and I don't think it is fair for you representing the debtors and then on the other hand switch sides, particularly if you had an ownership interest in the corporation that purchased the assets.

MR. HONEY: If the Court please, what actually happened was that Phoenix was formed and entered into a lease-agreement for the property that Precision Bilt Homes had been operating on. That lease payments to be made to the Trustee and then the indebtedness of Precision Bilt paid out of that—out of the payments. I think at this time probably Phoenix is maybe ninety days behind or so on it, I don't know.

MR. WRIGHT: The June payment is due, so are June, July, August, September and now October.

MR. HONEY: But at any rate, at the time that it was done, everybody was in agreement and there was no conflict with anybody. And at that time, I began to represent Phoenix, Phoenix took over the property. It was the agreement that I would continue to represent Precision Bilt Homes in the Bankruptcy Court.

THE COURT: Let me ask you a question.

MR. HONEY: And that Phoenix would pay the fee.

THE COURT: Was any part of that agreement that you would be fees by Phoenix for work done in connection or services owed in connection with Precision Bilt?

MR. HONEY: Yes, sir.

THE COURT: Was a disclosure made to that in the form of an application to the Court to approve attorney's fees?

MR. HONEY: No, sir.

THE COURT: Why wasn't one made?

MR. HONEY: I didn't think it was necessary. Precision Bilt wasn't paying—

THE COURT: The Bankruptcy Code specifically provides, as far as compensation goes, that you have got to get approval of the Court before—and it is really subject to hearing the application and the reasonableness of the fees.

MR. HONEY: If the Court please, it doesn't really matter because they have not paid me any fees anyway.

THE COURT: Well, it still may matter, Mr. Honey.

MR. HONEY: Well, I understand, but—

THE COURT: It may matter. It is just that all attorneys are required to make an application with the Court in regard to any fee agreement and have the Court to approve it subject to a notice and a hearing. Now, my recollection on Precision Bilt—it may be faulty, and this has been a long, drawn out proceeding, I guess for almost two years. And there has been an awful lot of work involved in it, I am aware of it, a lot of lawsuits. But if my recollection is right that—I think that you stated that you have received about $3,500.00, is that correct?

MR. HONEY: No, sir.

THE COURT: Well, I think—

MR. HONEY: I received a retainer before it was filed of $2,500.00.

THE COURT: Of how much?

MR. HONEY: $2,500.00.

THE COURT: $2,500.00—

MR. HONEY: Yes, sir.

THE COURT: —before it was filed?

MR. HONEY: And then, the accumulated fees of Precision Bilt were assumed by Phoenix Housing.

THE COURT: Have any of those fees been paid?

MR. HONEY: Have not been paid, no, sir.

MR. JACKSON: Your Honor, that it not technically correct. Up until the inception of Phoenix Housing, we were current until the last month. The last month—I have the billing at home—

THE COURT: Pardon?

MR. JACKSON: I have the billing at home. I didn't realize we might need it today, but the last month which I believe was October of last year, if I am not mistaken, was not paid by me personally. But prior to that all of his billings up to that point had been paid.

THE COURT: Do you have your checks?

MR. JACKSON: You betcha.

THE COURT: Pardon?

MR. JACKSON: Yes, sir.

THE COURT: Well, I am going to continue this hearing in regard to the fee aspect until November. I want to find out what has been paid, what hasn't been paid. I will go back and see what my notes are in regard to any hearings on previous attorney's fees one way or the other. Mr. Honey, you bring with you all your records.

MR. HONEY: All right, sir.

THE COURT: And also, bring the Phoenix contracts and whatever—if it sets forth in there what your compensation was to be and how it was to be paid and what part. And let's just present it all and then I am going to have a hearing in regard to that and see. But if you will—the Code specifically requires that an application be made and a full disclosure in regard to attorney's fees.

MR. HONEY: I think, Judge, I think my records will reflect that we received a retainer when the case was filed, that Precision Bilt has probably—

THE COURT: I don't think I ever saw an application filed by the attorney in this case when it was filed.

MR. HONEY: Well, there is no application for fees because it is my recollection that no fees have ever been paid. I think Precision Bilt—

THE COURT: Well, we'll see whether they have been paid or not. All I know is the Eighth Circuit Court of Appeals has got an opinion that if attorneys do not follow the procedure statutorily defined in the Code, that they won't approve the fees.

MR. HONEY: Yes, sir.

THE COURT: And I don't think this is the first time we've been through it. So, I am just going to set this matter of the attorney's fees for a hearing in November.

MR. HONEY: All right, sir.

THE COURT: Mr. Jackson, you bring all checks you have got and all your correspondence and itemization of statements. Mr. Honey, you bring your file.

MR. HONEY: All right, sir.

THE COURT: And I will sit down and we will just go through it and I will see what happens at that point.

Next, I guess at this point, like I said, and this morning we will draw up a protective order. It is effective now. I will sign it tomorrow when I get it typed. The books and records of Phoenix and all correspondence are to be preserved on the premises. The trustee is to have immediate access to the books and records for its own investigation as to any assets that were subject to the purchase agreement by the debtor estate. An accounting is to be filed within the next fifteen days from the date that the agreement was entered into reflecting an inventory of the assets, use of all the assets, and any income received and where it is paid.

The Court is convinced that Mr. Honey has engaged in willful misconduct and deceit before the Court in connection with funds paid to him by the debtors.

### Conclusions of Law

Section 327 of title 11 provides that the trustee, with the Court's approval, may employ an attorney to represent the trustee in carrying out the trustee's duties under title 11. Bankruptcy Rule 2014(a) further provides that an application is to be filed with the Court by the trustee and approval is to be obtained from the Court allowing the trustee to employ an attorney. The application must state "the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for his selection, the professional services to be rendered, any proposed arrangement for compensation [of the attorney] and to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants." Fed.R. Bankr.P. 2014(a).

Also, under 11 U.S.C. §§ 330, 331 and Bankruptcy Rule 2016, an attorney hired to represent a debtor-in-possession must give notice to creditors and receive court approval prior to being compensated by the estate.

"Failure of attorneys to comply with the various requirements concerning employment, disclosure of compensation and receipt of fees has long been a basis in bankruptcy to impose a penalty for such misconduct by ordering the estate to be reimbursed for fees improperly received." *In re Lavender*, No. TX 82–037, slip. op. at p. 2 (Bkrtcy W.D.Ark. Apr. 24, 1985) *aff'd* 785 F.2d 247 (8th Cir., 1986); *see also In re Devers*, 33 B.R. 793 (D.C.1983). It is true that because the bankruptcy court is a court of equity "in limited circumstances, the bankruptcy court as a matter of fundamental fairness may exercise its discretion and enter a nunc pro tunc order authorizing compensation." *Lavender*, No. 85–1690, slip. op. at 2; *and see Johnson v. First Nat. Bank of Montevideo, Minn.*, 719 F.2d 270, 273 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). However, here, it is clear that the attorney has failed to comply with the Bankruptcy Code and the Bankruptcy Rules of Procedure. Absence such compliance, especially in light of Mr. Honey's repeated misrepresentations to the Court, there is no right to compensation. *In re Lavender*, No. TX 82–037 (Bkrtcy.W. D.Ark. April 24, 1985), *aff'd* 785 F.2d 247 (8th Cir., 1986).

The monies paid to Mr. Honey are not funds of Mr. Jackson personally but are property of the debtors' estates under 11 U.S.C. § 541. They are to be paid out of the estate only upon proper application, notice and hearing. Mr. Honey, as an attorney licensed to practice before this Court, knew he was not free to disregard his fiduciary relationship as legal represen-

tation for the debtors' estate to receive monies as Court approved.

Therefore, the Court concludes that Charles L. Honey should be required to reimburse the debtors' estates in the amount of $13,693.14 for monies received by him without Court approval as compensation for professional services and for reimbursement for actual, necessary expenses.

*Conclusion*

Why Mr. Honey chose to make repeated misrepresentations to the Court when asked about fees received rather than to make full and honest disclosure is incomprehensible to this Court.

The Court, if it had the power to do so, would suspend Mr. Honey from practicing before this Court for at least one year. However, the Court is convinced that neither 28 U.S.C. §§ 1334, 157 or 11 U.S.C. § 105 gives it such power. Nevertheless, the Court is forwarding to the Committee on Professional Conduct for Arkansas, a copy of this Memorandum Opinion which will serve as a formal complaint against Mr. Honey.

An Order in accordance with this opinion is being entered simultaneously.